# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3506

_____

United States of America

*Plaintiff - Appellee*

v.

Iyaun D. Bell

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: April 14, 2016
Filed: October 28, 2016

_____

Before GRUENDER, BRIGHT, and KELLY, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Iyaun Bell pleaded guilty to being a felon in possession of a firearm. Prior to sentencing, the district court calculated Bell's advisory Guidelines range based in part on the conclusion that Bell had a prior conviction that qualified as a "crime of violence" under United States Sentencing Guidelines Manual (U.S.S.G.) § 2K2.1(a)(4)(A), a calculation which increased the advisory Guidelines range. After

the district court sentenced Bell to thirty-seven months of imprisonment, Bell filed this appeal arguing his prior conviction does not qualify as a crime of violence. We reverse and remand for resentencing.

I

On March 14, 2015, an officer initiated a vehicle stop. The officer observed the driver throw an object out of the vehicle's window. The officer went to the area where the object landed and located a firearm with eight rounds of ammunition. The driver fled. Police eventually apprehended the driver and identified him as Bell.

A federal grand jury indicted Bell with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Bell pleaded guilty. Prior to sentencing, a probation officer completed a Presentence Investigation Report (PSR). The PSR calculated a base-offense level of 20 after concluding Bell had a conviction under Missouri law for second-degree robbery that qualified as a "crime of violence." See U.S.S.G. § 2K2.1(a)(4)(A) (providing for a base-offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence"). Bell objected. The district court rejected Bell's objection, adopted the PSR's recommendation, and calculated Bell's advisory Guidelines range at 37-46 months. The district court then sentenced Bell to thirty-seven months of imprisonment. This timely appeal followed.

II

A

Bell argues his prior conviction for second-degree robbery should not have been used to increase his base-offense level because it does not qualify as a crime of violence. "We review de novo a district court's determination that an offense

qualifies as a crime of violence under the Guidelines." United States v. Harrison, 809 F.3d 420, 425 (8th Cir. 2015). Unless a statute is divisible, i.e., defines multiple offenses some of which would qualify as crimes of violence and some of which would not, we "focus on the generic elements of the offense and not on the specific facts underlying [the defendant's] conviction." United States v. Gordon, 557 F.3d 623, 625 (8th Cir. 2009); see also United States v. Ossana, 638 F.3d 895, 899-900 (8th Cir. 2011) (explaining the difference between the categorical approach applicable to indivisible statutes, and the modified categorical approach applicable to divisible statutes).

Section 2K2.1 incorporates the definition of "crime of violence" used in § 4B1.2(a). See U.S.S.G. § 2K2.1 cmt. n.1. Under the relevant provision of § 4B1.2(a), the phrase "crime of violence" means "any offense [that] . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." In Missouri, "[a] person commits the crime of robbery in the second degree when he forcibly steals property." Mo. Rev. Stat. § 569.030.1. The term "forcibly steals" is further defined in a separate statute providing in relevant part that "a person 'forcibly steals,' and thereby commits robbery, when, in the course of stealing . . . he uses or threatens the immediate use of physical force upon another person." Mo. Rev. Stat. § 569.010(1).[1] Accordingly, Missouri courts have identified § 569.030.1 as setting forth a single indivisible crime containing two generic elements: "stealing and the

---

[1]Section 569.010 further states the use or threat of immediate physical force must be for certain enumerated purposes: (a) to prevent or overcome resistance to the taking of property or the retention of property immediately after the taking; or (b) to compel the property's owner or another person "to deliver up the property or to engage in other conduct which aids in commission of the theft." The Missouri Supreme Court has characterized these enumerated purposes as "either defeating resistance to the theft or compelling the surrender of the property." State v. Coleman, 463 S.W.3d 353, 354 (Mo. 2015) (en banc).

use of actual or threatened force." Maclin v. State, 184 S.W.3d 103, 109 (Mo. Ct. App. 2006); see also Hughes v. State, 204 S.W.3d 376, 381 (Mo. Ct. App. 2006).[2]

At first blush, then, it appears as though Bell's conviction would qualify as a crime of violence: a crime of violence has as an element the use, attempted use, or threatened use of physical force against another person, and an element of second-degree robbery in Missouri is the use or threat of "physical force upon another person." Mo. Rev. Stat. § 569.010(1).

The *amount* of physical force required for a person to be convicted of second-degree robbery in Missouri does not, however, "necessarily" rise to the level of physical force required for a crime of violence under the Guidelines. See Ossana, 638 F.3d at 900 (explaining a conviction must "*necessarily*" involve the use, attempted use, or threatened use of physical force to qualify as a crime of violence under the Guidelines). The Supreme Court has described this as a "demanding requirement." Shepard v. United States, 544 U.S. 13, 24 (2005) (plurality opinion).

According to the Supreme Court, "physical force" means "violent force—that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010).[3] Thus, the "merest touch" is insufficient,

---

[2]As to the second element requiring the use of actual or threatened force, Missouri's approved model criminal jury instruction for robbery in the second degree further explains that the use or threat of force must be for one of the purposes enumerated in Section 569.010. See MAI-CR 3d 323.04.

[3]Although Johnson described the meaning of "physical force" for purposes of determining a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(i), the phrase has the identical meaning for purposes of determining a "crime of violence" under the Guidelines. See, e.g., United States v. Boose, 739 F.3d 1185, 1187 n.1 (8th Cir. 2014).

-4-

but the "degree of force necessary to inflict pain—a slap in the face, for example" is sufficient to establish "physical force." Id. at 143. When determining whether Missouri's second-degree robbery statute requires the level of violent force described in Johnson, we must consider not just the language of the state statute involved, but also the Missouri courts' interpretation of the elements of second-degree robbery. See id. at 138 ("We are . . . bound by the [state] Supreme Court's interpretation of state law, including its determination of the elements of [the state statute.]"); see also Western Heritage Ins. Co. v. Asphalt Wizards, 795 F.3d 832, 837 (8th Cir. 2015) ("[W]e follow the decisions of Missouri's intermediate courts when they constitute the best evidence of Missouri law.").

Moreover, when our focus is on the generic elements of the offense – as is the case here – rather than a specific defendant's conduct, we must consider the lowest level of conduct that may support a conviction under the statute. See Moncrieffe v. Holder,133 S.Ct. 1678, 1684 (2013) ("Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts [would qualify as a crime of violence].") (quoting Johnson, 559 U.S. at 137). Although the "theoretical possibility" that a state may apply its statute to conduct falling short of violent force is not enough to disqualify a conviction, a "realistic probability" will suffice. See id. at 1685 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)).

A Missouri court upheld a conviction for second-degree robbery in at least one situation where a defendant's conduct appears to have fallen short of using "force capable of causing physical pain or injury to another person." Johnson, 559 U.S. at 140. In State v. Lewis, the Missouri Court of Appeals sustained a conviction based on the victim's testimony that the defendant "'bumped her shoulder and 'yanked' her purse away from her[,]" while "another witness testified that [the defendant] 'nudged'

-5-

[the victim]," and yet a "third witness testified that there was a 'slight' struggle" over the purse. 466 S.W.3d 629, 631 (Mo. Ct. App. 2015). Significantly, the victim did not testify the slight struggle caused her any pain, or that she was injured by the incident. Id. Even more significantly, the court explained the line between the amount of force sufficient to sustain a conviction for second-degree robbery, and insufficient force: "In sum, where there was no physical contact, no struggle, and no injury, [Missouri] courts have found the evidence insufficient to support a [second-degree] robbery conviction. But where *one or more* of those circumstances is present, a jury reasonably could find a use of force." Id. at 632 (internal citation omitted) (emphasis added).

In other words, in Missouri a defendant can be convicted of second-degree robbery when he has physical contact with a victim but does not necessarily cause physical pain or injury.[4] Although this is not the same as concluding the force used by such a defendant is not "*capable* of causing physical pain or injury," Johnson, 559 U.S. at 130 (emphasis added), it does lead us to conclude there is at least a "reasonable probability" Missouri could apply its statute (or already has) to conduct falling short of violent force. Moncrieffe, 133 S.Ct. at 1685. However, a second-degree robbery under Missouri law does not necessarily require use of the type of violent force described by the Supreme Court in Johnson.[5]

---

[4]Although Lewis was decided in 2015, the seven Missouri cases the court summarized before reaching its conclusion were decided between 1966 and 2010. See id. Contrary to the dissent's suggestion otherwise, the result in Lewis does not represent a change in Missouri law, but an application of existing precedent.

[5]To the extent our prior decisions in United States v. Hennecke, 590 F.3d 619 (8th Cir. 2010), and United States v. Green, 157 F.3d 617 (8th Cir. 1998), suggest that a second-degree robbery under Missouri law would qualify as a crime of violence under the Guidelines, they have no import here because they were decided prior to Johnson. See United States v. Anderson, 771 F.3d 1064, 1067 (8th Cir. 2014)

Our conclusion about Missouri's second-degree robbery statute is consistent with the Fourth Circuit's view of common law robbery under North Carolina law. See United States v. Gardner, 823 F.3d 793, 803-04 (4th Cir. 2016) (concluding that "the minimun conduct necessary to sustain a conviction for North Carolina common law robbery does not" meet Johnson's violent force requirement, relying on state court decisions finding that "pushing the victim's hand off of a carton of cigarettes" and "push[ing] the shoulder of an electronics store clerk, causing her to fall onto shelves while the defendant took possession of a television" involved sufficient force to sustain convictions).

Thus, statutes that criminalize conduct falling short of Johnson's "violent force" do not qualify as crimes of violence under U.S.S.G. § 2K2.1(a)(4)(A). Missouri's second-degree robbery statute is such a statute, because it does not necessarily require the use of violent force as one of its elements.

B

The government argues Bell's prior conviction still qualifies as a crime of violence – even if it does not necessarily involve the level of violent force described in Johnson – because "robbery" is expressly enumerated as a "crime of violence" in the commentary to the Guideline's career offender provisions. See U.S.S.G. § 4B1.2 cmt. n.1 ("For purposes of this guideline . . . 'Crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, *robbery*, arson, extortion, extortionate extension of credit, and burglary of a dwelling.") (emphasis added); U.S.S.G. § 2K2.1 cmt. n.1 (incorporating the meaning given to the term "crime of violence" in "Application Note 1 of the Commentary to § 4B1.2"); see also

_____

(explaining we are not bound by a prior panel decision when it "is cast into doubt by an intervening Supreme Court decision").

-7-

Stinson v. United States, 508 U.S. 36, 38 (1993) (explaining that the commentary to the Guidelines "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that [G]uideline").

But at the time of Bell's sentencing – as well as when he committed his instant federal conviction – the Guideline itself did not list robbery as an enumerated offense. At that time, only four crimes were expressly enumerated in § 4B1.2 as crimes of violence: "burglary of a dwelling, arson, . . . extortion, [or offenses] involv[ing the] use of explosives." U.S.S.G. § 4B1.2(a)(2) (effective November 1, 2014).[6] The issue, then, is whether the government can rely solely upon the commentary when it *expands* upon the four offenses specifically enumerated in the Guideline itself. The answer is no.

In a post-Johnson decision, the First Circuit considered whether the inclusion of an offense in the commentary to § 4B1.2, standing alone, was enough to qualify an offense as a crime of violence. See United States v. Soto-Rivera, 811 F.3d 53 (1st Cir. 2016). Defendant Soto-Rivera argued his crime of possessing a machinegun did not qualify as a crime of violence under either the Guideline's "force" clause (the same clause at issue here), or the Guideline's "residual clause" (identical to the ACCA residual clause the Supreme Court declared unconstitutional in Johnson). The government conceded both points, but argued Soto-Rivera's crime still counted as a crime of violence because it was included in the commentary to § 4B1.2. Id. at 58-59.

The First Circuit disagreed, holding that a Guideline's commentary must be consistent with the Guideline itself. Id. at 60. The court explained the commentary's

_____

[6]Subsequent to Johnson, the Sentencing Commission amended § 4B1.2, effective August 1, 2016. The Guideline itself now expressly enumerates "robbery" as a crime of violence, as well as a number of other offenses which were previously enumerated only in the commentary.

inclusion of an offense may have been consistent with the Guideline when there was a residual clause in place to give the offense a "textual hook," id. at 60, but became inconsistent in the absence of the residual clause:

> With § 4B1.2(a) stripped of its residual clause, the government's position that we may rely on Application Note 1 to uphold Soto-Rivera's designation as a Career Offender is hopeless. . . . [P]ossession [of a machinegun] is clearly not one of those specifically-enumerated crimes listed in U.S.S.G. § 4B1.2(a)(2). Thus, in the absence of the residual clause, there is nothing within § 4B1.2(a)'s text to serve as an anchor for Application Note 1's inclusion of possession of a machinegun within the definition of crime of violence.

Id.

Similarly, in this case, robbery was not one of the specifically-enumerated crimes listed in the version of § 4B1.2(a)(2) which applied to Bell. Prior to Johnson, the residual clause may have served as an anchor for the commentary's inclusion of "robbery" as a crime of violence because it "otherwise involve[d] conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2) (effective November 1, 2014). Post-Johnson, however, § 4B1.2's commentary, standing alone, cannot serve as an independent basis for a conviction to qualify as a crime of violence because "doing so would be inconsistent with the post-*Johnson* text of the Guideline itself." Soto-Rivera, 811 F.3d at 60.

> By its clear language, once shorn of the residual clause § 4B1.2(a) sets forth a limited universe of specific offenses that qualify as a "crime of violence." There is simply no mechanism or textual hook in the Guideline that allows us to import offenses not specifically listed therein into § 4B1.2(a)'s definition of "crime of violence." With no such path available to us, doing so would be inconsistent with the text of the Guideline.

Id. We agree with the First Circuit's reasoning in Soto-Rivera, as have other courts. In United States v. Rollins, No. 13-1731, 2016 WL 4587028 (7th Cir. Aug. 29, 2016), the Seventh Circuit rejected the government's argument that the commentary to § 4B1.2 independently supports the application of the Guideline's career offender enhancements, concluding Soto-Rivera "has it exactly right." Id. at *5.

> Under § 4B1.2(a), "crime of violence" means subpart 1 (the elements clause) and subpart 2 (the four specific crimes followed by the residual clause). If the application note's list is not interpreting one of those two subparts— and it isn't once the residual clause drops out—then it is in effect *adding* to the definition. And that's *necessarily* inconsistent with the text of the guideline itself.

Id. at *4; see also United States v. Brown, No. 1:15CR251-1, 2016 WL 4487759, at *2-3 (M.D. N.C. Aug. 25, 2016) (following the reasoning in Soto-Rivera and concluding "the inclusion of robbery in the commentary [to § 4B1.2] is now inconsistent with the Guidelines and that portion of the commentary should be disregarded"). Bell's prior conviction does not qualify as a crime of violence solely because "robbery" was included in the commentary to § 4B1.2, and we therefore reject the government's argument to the contrary.[7]

---

[7]The government's reliance upon United States v. Newton, 259 F.3d 964 (8th Cir. 2001), United States v. Brown, 550 F.3d 724 (8th Cir. 2008), and United States v. Sawyer, 588 F.3d 548 (8th Cir. 2009), is of no import because those cases were all decided prior to Johnson, when the residual clause still provided a textual hook for the commentary's inclusion of offenses not otherwise enumerated in § 4B1.2.

## III

For the reasons set forth in this opinion, we reverse and remand for resentencing consistent with this opinion.

GRUENDER, Circuit Judge, dissenting.

The question in this case is whether Bell's second-degree robbery conviction qualifies as a crime of violence under United States Sentencing Guidelines Manual ("U.S.S.G.") § 2K2.1(a)(4)(A) and § 4B1.2(a)(1). In my view, it does, as Missouri second-degree robbery necessarily requires the type of violent force described by the Supreme Court in *Johnson v. United States*, 559 U.S. 133 (2010). Because the court reaches a contrary conclusion, I respectfully dissent.

The court relies on dicta from a single case to conclude that Missouri second-degree robbery does not necessarily require force capable of causing physical pain or injury to another person. *See State v. Lewis*, 466 S.W.3d 629, 632 (Mo. Ct. App. 2015). The court latches on to two sentences in *State v. Lewis*: "In sum, where there was no physical contact, no struggle, and no injury, [Missouri] courts have found the evidence insufficient to support a [second-degree] robbery conviction. But where *one or more* of those circumstances is present, a jury reasonably could find a use of force." *Id.* at 632 (citations omitted) (emphasis added). The court then focuses solely on how physical contact does not meet the force requirement in *Johnson*. *See Johnson*, 559 U.S. at 140 ("[T]he phrase 'physical force' means . . . force capable of causing physical pain or injury to another person.").

In focusing on this dicta, the court loses sight of the holding of *Lewis*. *See* 466 S.W.3d at 631-33. For second-degree robbery to qualify as a crime of violence, the use or threatened use of force in the course of stealing property from a person must

be, at a minimum, "capable" of causing pain or injury to that person. *See Johnson*, 559 U.S. at 140. *Lewis* does not hold otherwise. To the contrary, the Missouri Court of Appeals reaffirmed the longstanding definition of second-degree robbery as "enough force to prevent or overcome . . . resistance," 466 S.W.3d at 633, and upheld Lewis's second-degree robbery conviction when he bumped the victim from behind, momentarily struggled with her, and then yanked the purse out of her hands, *id.* These actions are akin to "a slap in the face" and therefore meet the *Johnson* standard. *Johnson*, 559 U.S. at 143.

Despite the court's opposite interpretation, *Lewis* does not deal primarily with physical contact but with actions that as a whole are "capable of causing physical pain or injury to another person." *Id.* at 140. The dicta in *Lewis*—unconnected from its facts—cannot overcome the consistent line of Missouri second-degree robbery cases requiring force capable of preventing or overcoming resistance. In fact, *Lewis* cites to these exact cases. *See State v. Childs*, 257 S.W.3d 655, 660 (Mo. Ct. App. 2008) (finding that a "tussle" satisfied the elements of a robbery because "tussling" means fighting, struggling, contending, wrestling, and scuffling); *State v. Tivis*, 884 S.W.2d 28, 30 (Mo. Ct. App. 1994) (concluding that "yanking" a purse off a victim's shoulder is insufficient to prove second-degree robbery without a struggle or injury); *State v. Butler*, 719 S.W.2d 35, 37 (Mo. Ct. App. 1986) (upholding second-degree robbery where Butler grabbed a woman's purse and injured her finger). *Lewis* does not provide a "realistic probability" that Missouri will apply its second-degree robbery statute to conduct falling short of violent force. *See Moncrieffe v. Holder*, 133 S.Ct. 1678, 1685 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). Because a "theoretical possibility" is not enough, the district court should be affirmed. *See id.*

Even if *Lewis* could be read to allow for a second-degree robbery conviction based on conduct falling short of violent force, our decision in *United States v.*

*Roblero-Ramirez* requires that we analyze state law *at the time of the conviction*. 716 F.3d 1122, 1127 (8th Cir. 2013). Doing so leads to the conclusion that Missouri second-degree robbery qualifies as a crime of violence.

In *Roblero-Ramirez*, we reversed a sentencing enhancement for a crime of violence because Roblero-Ramirez's 2006 Nebraska conviction for manslaughter required only unintentional conduct, while generic federal manslaughter required intentional or reckless conduct. 716 F.3d at 1126-27. However, to reach this conclusion, we relied on the fact that when Roblero-Ramirez was convicted of manslaughter in 2006, state law did not require proof of intent. *Id.* While the Nebraska Supreme Court later held that manslaughter required intent, "[that] interpretation was not Nebraska law when Roblero-Ramirez was convicted in 2006." *Id.* at 1127. Thus, we reversed.

*Roblero-Ramirez* is important because *Lewis* was decided in 2015, well after Bell's conviction for second-degree robbery in 2001. As noted above, at the time of Bell's 2001 conviction, Missouri second-degree robbery cases required force capable of preventing or overcoming resistance. *See also Brown v. Schnuck Markets, Inc.*, 973 S.W.2d 530, 533 n.1 (Mo. Ct. App. 1998) ("Some purse snatchings involve sufficient force to constitute robbery in the second degree; in others, there is no violence.") (quoting *Brown v. Nat'l Super Markets, Inc.*, 731 S.W.2d 291, 294 (Mo. Ct. App. 1987)). In fact, *Lewis* is the only Missouri case to include language implying mere physical contact suffices for robbery in the second degree. *See* 466 S.W.3d at 632. Therefore, at the time of Bell's conviction, there was no realistic probability that Missouri applied its second-degree robbery statute to conduct falling short of violent force. Even if *Lewis* stood for the proposition the court suggests, we should affirm the district court based on Missouri law at the time of Bell's conviction.

For the foregoing reasons, I respectfully dissent.

---