# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1998
_____

United States of America

*Plaintiff - Appellee*

v.

Dominic Irons

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 16, 2016
Filed: February 27, 2017

_____

Before WOLLMAN and SMITH, Circuit Judges, and WRIGHT,[1] District Judge.

_____

WRIGHT, District Judge.

Following his conviction of unlawful possession of a firearm, Dominic Irons appeals the district court's imposition of a 15-year mandatory minimum sentence

_____

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, sitting by designation.

under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The district court[2] determined that, because Irons has at least three prior violent felony convictions, he is subject to a 15-year mandatory minimum sentence. Irons contends that the district court erred by (1) employing the modified categorical approach to determine whether his state conviction qualifies as a predicate violent offense, (2) concluding that his state conviction is a "violent felony" under the ACCA, and (3) classifying his state conviction as a "crime of violence" under the United States Federal Sentencing Guidelines ("Guidelines"). We affirm.

The underlying facts are undisputed. On January 8, 2016, Irons pleaded guilty to unlawful possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). Following a presentence investigation, the district court determined that Irons had at least three prior violent-felony convictions and, therefore, is an Armed Career Criminal subject to an enhanced sentence under 18 U.S.C. § 924(e). Irons's criminal history includes a 2001 conviction of unlawful discharge of a firearm, a 2003 conviction of unlawful use of a weapon and a 2012 conviction of violence against another inmate. Irons objected to the classification of his 2012 conviction as a "violent offense" under the ACCA and as a "crime of violence" under the Guidelines.[3] At his sentencing hearing, Irons argued that neither imposing a mandatory minimum sentence under the ACCA nor increasing his offense level under the Guidelines was warranted because his 2012 conviction is not a predicate violent felony. After overruling Irons's objections, the district court imposed a 180-month mandatory minimum sentence of imprisonment. Irons appeals.

---

[2]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

[3]Irons conceded that his 2001 and 2003 convictions involved violent felonies under the ACCA, and the parties do not dispute those classifications on appeal.

## I.

The ACCA mandates a minimum sentence of 15 years' imprisonment for a person who violates 18 U.S.C. § 922(g) and "has three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1); *Descamps v. United States*, 133 S. Ct. 2276, 2282 (2013). The ACCA defines a "violent felony," as relevant here, as any state or federal felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B); *Descamps*, 133 S. Ct. at 2282. Irons contends that because his 2012 conviction of committing violence against another inmate, in violation of Mo. Rev. Stat. § 217.385 (2000), is not a "violent felony" under the ACCA, the district court erred by imposing a 15-year mandatory minimum sentence. Irons challenges both the district court's methodology in applying the ACCA and its legal conclusion that his conviction under Mo. Rev. Stat. § 217.385, subd. 1, is a "violent felony" under the ACCA and a "crime of violence" under the Guidelines. We review de novo a district court's construction and application of both the ACCA and the Guidelines. *United States v. Sykes*, 844 F.3d 712, 715 (8th Cir. 2016); *United States v. Harrison*, 809 F.3d 420, 425 (8th Cir. 2015).

## A.

We first address Irons's challenge to the district court's use of the modified categorical approach to determine whether his 2012 conviction of committing violence against another inmate, Mo. Rev. Stat. § 217.385, subd. 1, is a violent felony. Irons argues that the district court's use of the modified categorical approach

was neither necessary nor appropriate because neither party at his sentencing hearing disputed the statutory basis for his conviction.

The Supreme Court of the United States established the "categorical approach" as the analytical framework for courts to use when determining whether a defendant's prior conviction qualifies as one of the ACCA's enumerated predicate offenses. *Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also Descamps*, 133 S. Ct. at 2283. The categorical approach requires courts to look only to the "elements . . . of a defendant's prior offenses, and *not* to the particular facts underlying those convictions." *Descamps*, 133 S. Ct. at 2283 (internal quotation marks omitted); *accord United States v. Soileau*, 686 F.3d 861, 864 (8th Cir. 2012). When a statute comprises multiple, alternative versions of the offense to which a defendant pleaded guilty, the *modified* categorical approach is used to determine "which statutory phrase, contained within a statute listing several different crimes, cover[s] a prior conviction." *Descamps*, 133 S. Ct. at 2285 (internal quotation marks omitted); *accord United States v. Schaffer*, 818 F.3d 796, 797 (8th Cir. 2016) ("When a statute criminalizes both conduct that does and does not qualify as a violent felony, courts apply the modified categorical approach."). To perform this analysis, courts scrutinize a restricted set of sources—namely, the plea agreement, if any, or the transcript of the guilty-plea colloquy—to assess which part of the statute forms the basis for the conviction. *Descamps*, 133 S. Ct. at 2284. The *Descamps* Court explained:

> Applied in [this] way . . . the modified approach merely helps implement the categorical approach when a defendant [is] convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead *as a tool*. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And

it preserves the categorical approach's basic method: comparing those elements with the generic offense's. All the modified approach adds is a mechanism . . . to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense.

*Id.* at 2285 (internal quotation marks omitted) (emphasis added).

Here, Irons pleaded guilty to violating Mo. Rev. Stat. § 217.385, which contains two subdivisions:

1. No offender shall knowingly commit violence to an employee of the department or to another offender housed in a department correctional center. Violation of this subsection shall be a class B felony.

2. No offender shall knowingly damage any building or other property owned or operated by the department. Violation of this subsection shall be a class C felony.

Mo. Rev. Stat. § 217.385 (2000). Because this statute contains two subdivisions prohibiting different felonious conduct, the district court needed to employ the modified categorical approach to "identify, from among several alternatives, the crime of conviction." *See Descamps*, 133 S. Ct. at 2285. This methodology was necessary to determine whether Irons's conviction under Mo. Rev. Stat. § 217.385, subd. 1, qualifies as a "violent felony" under the ACCA. *See id.* Using this approach, the district court concluded that Irons's conviction implicated subdivision 1, which addresses violence against another inmate. The record supports this conclusion.

Irons argues that the district court's decision to employ the modified categorical approach was unnecessary because neither party contested the statutory provision to which Irons pleaded guilty. But Irons cites no authority for the proposition that the district court must accept such a concession or that the use of the modified categorical approach, despite the parties' agreement as to the nature of the offense, constitutes reversible error. The district court appropriately employed the modified categorical approach in these circumstances.[4]

B.

Irons next argues that his 2012 conviction of "knowingly commit[ting] violence to . . . another offender housed in a department correctional center," in violation of Mo. Rev. Stat. § 217.385, subd. 1, is not a prior conviction of a violent felony under the ACCA. Irons contends that Section 217.385, subdivision 1, is overinclusive because it "criminalize[s] conduct that fails to rise to [the] level of force capable of causing physical pain or injury." For this reason, he argues, it fails to satisfy the ACCA's definition of a "violent felony."

To determine whether a state conviction is a "violent felony" under the ACCA, we apply the categorical approach to assess whether the elements of the crime of

_____

[4]Irons implies that the district court improperly considered evidence that Irons struck another inmate in the face and head with a closed fist. *See Descamps*, 133 S. Ct. at 2288 (explaining that the modified categorical approach does *not* permit the sentencing court to examine the conduct underlying a defendant's previous offense). The record is unclear, however, as to what weight, if any, the district court gave the facts underlying Irons's 2012 conviction. In any event, we apply de novo the modified categorical approach without reference to the underlying facts of Irons's conviction. *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

conviction satisfy the ACCA's definition of a "violent felony." *Johnson v. United States*, 559 U.S. 133, 138 (2010). The ACCA defines a "violent felony," in relevant part as "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B). A *violent* felony connotes "a substantial degree of force" or the use of "strong physical force." *Johnson*, 559 U.S. at 140. Although the term "physical force" is not defined by the ACCA, the Supreme Court defines "physical force" as "*violent* force . . . capable of causing physical pain or injury to another person." *Id.* (using Webster's Dictionary, the Oxford English Dictionary and Black's Law Dictionary as guideposts to define these terms).

Irons asserts that Section 217.385, subdivision 1, is overinclusive because *de minimis* force could support a conviction, and *de minimis* force is not a "violent felony" for ACCA purposes. When determining whether a state offense is a "violent felony" under the ACCA, we are bound by a state's delineation of the elements. *Id.* at 138. In *State v. Mack*, the Missouri Court of Appeals analyzed Mo. Rev. Stat. § 217.385, subd. 1, and its requirement that a defendant "commit[ ] violence." 12 S.W.3d 349, 351-52 (Mo. Ct. App. 2000). The defendant in *Mack* was convicted of violating Mo. Rev. Stat. § 217.385, subd. 1, for spitting in the face of a correctional officer. *Id.* at 351. Although the statute requires the commission of "violence," the Missouri Court of Appeals observed that the statute does not define that term. *Id.* After consulting multiple dictionaries, the Missouri Court of Appeals concluded that "violence," as used in Section 217.385, subdivision 1, requires an "exertion of any physical force so as to injure or abuse." *Id.* at 352 (quoting Webster's Third New International Dictionary 2554 (1993)). The Missouri Court of Appeals reversed the defendant's conviction for spitting in the face of a correctional officer because equating spitting with violence "stretches the definition of violence too far." *Id.* In sum, the Missouri Court of Appeals *expressly rejected* a construction of Mo. Rev.

-7-

Stat. § 217.385, subd. 1, that could support a conviction based on *de minimis* conduct. *See Mack*, 12 S.W.3d at 352-53.

Irons asserts that *Mack* "demonstrates that the State actively pursues criminal charges against individuals even for *de minimis* conduct." But this argument is not germane to the task before us, which is one of statutory construction and application. *Mack* addresses and defines the elements of Mo. Rev. Stat. § 217.385, subd. 1, and we must compare those *elements* to the ACCA's statutory definition of "violent felony." *See Johnson*, 559 U.S. at 138. The discretion exercised by the state prosecutor's office in deciding whom to charge is not relevant to this legal analysis.[5]

Moreover, in *United States v. Dudley*, we held that "the use or threatened use of physical force" is *an inherent element* of Mo. Rev. Stat. § 217.385, subd. 1, and thus a "crime of violence" under the Guidelines. 230 F.3d 1364, 2000 WL 1286259, at *1 (8th Cir. 2000) (per curiam) (unpublished table opinion). Our holding in *Dudley* is equally applicable here when addressing whether a conviction under Mo. Rev. Stat. § 217.385, subd. 1, is a "violent felony" under the ACCA. *See United States v. Williams*, 537 F.3d 969, 971-72 (8th Cir. 2008) (explaining that the definition of "crime of violence" under the Guidelines is identical to the definition of "violent felony" under the ACCA). Irons argues that *Descamps* and *Mathis v. United States*, 136 S. Ct. 2243 (2016), implicitly overruled *Dudley* because the *Dudley* court

---

[5]Irons's reliance on *United States v. Bell*, 840 F.3d 963 (8th Cir. 2016), is similarly misguided. Citing *Bell*, Irons argues that there is a "realistic probability" that Missouri may apply Section 217.385, subdivision 1, "to conduct falling short of violence." But in *Bell*, we relied on a Missouri Court of Appeals decision that applied Missouri's second-degree robbery statute to conduct that fell short of the ACCA's definition of violent conduct. *See Bell*, 840 F.3d at 966 (citing *State v. Lewis*, 466 S.W.3d 629 (Mo. Ct. App. 2015)). Here, the application of *Mack* leads to the opposite conclusion when analyzing Section 217.385, subdivision 1.

improperly relied on the facts underlying the defendant's conviction. But this argument mischaracterizes *Dudley*'s analysis. *Dudley* did not analyze the facts underlying the conviction; rather the analysis in *Dudley* rejected the defendant's assertion that the predicate offense conduct was not violent because the defendant intended to "merely shove[ ]" the victim. *Dudley*, 2000 WL 1286259, at *1. Irons's attempts to distinguish *Dudley* are unavailing because we consider the elements of the prior offense, not the particular manner in which the offense was committed.[6]

The same conclusion is compelled independent of *Dudley*, however. Both the ACCA and Mo. Rev. Stat. § 217.385, subd. 1, include the phrase "violence" without defining the term. To define "violence," both the United States Supreme Court and the Missouri Court of Appeals relied on the same definitional sources and conducted a comparable analysis to determine the term's plain meaning. *See Johnson*, 599 U.S. at 140 (defining "violent" using Webster's Dictionary, the Oxford English Dictionary and Black's Law Dictionary); *Mack*, 12 S.W.3d at 352 (same). The predicate offense of committing violence against another inmate, in violation of Mo. Rev. Stat. § 217.385, subd. 1, therefore satisfies the definition of a violent felony under the ACCA. *See* 18 U.S.C. § 924(e)(2)(B); *Johnson*, 559 U.S. at 140-41. Accordingly, a conviction under Mo. Rev. Stat. § 217.385, subd. 1, is a predicate violent felony under the ACCA.

---

[6]It is true that the *Dudley* court cited *United States v. Wright*, 957 F.2d 510, 521 (8th Cir. 1992), which endorsed examining the facts underlying a conviction if the offense could be committed without violence. *Dudley*, 2000 WL 1286259, at *1. But even if that proposition in *Wright* no longer stands, *Dudley*'s determination that "the use or threatened use of physical force is an inherent element" of Mo. Rev. Stat. § 217.385, subd. 1, endures.

C.

Irons also contends that his conviction under Mo. Rev. Stat. § 217.385, subd. 1, is not a "crime of violence" under the Guidelines. *See* U.S.S.G. § 4B1.2(a)(1). This Court has never recognized a distinction between the definition of a "violent felony" under the ACCA and a "crime of violence" under the Guidelines, however. *See Bell*, 840 F.3d at 965 n.3. And a basis for doing so is not presented here. Because a violation of Mo. Rev. Stat. § 217.385, subd. 1, is a predicate violent felony under the ACCA, it also is a "crime of violence" under the Guidelines.

III.

Accordingly, we affirm the sentence imposed by the district court.

_____